

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD M. WEXLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 8296 |
| ) | Judge Joan H. Lefkow |
| CIRCLE GROUP HOLDING, INC. ) | |
| and GREGORY J. HALPERN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard M. Wexler ("Wexler"), has filed a three-count Complaint against defendants, Circle Group Holdings, Inc. ("Circle Group") and its Chief Executive Officer, Gregory J. Halpern ("Halpern"). Count I alleges that Circle Group materially breached a Business Consulting Agreement (the "Agreement") between the parties and three Warrant Agreements (the "Warrants"). Count II, pled in the alternative to Count I, seeks to recover monetary damages from Circle Group under the common law theory of *quantum meruit*. Count III alleges common law fraud against Halpern. Circle Group has filed a Motion for Judgment on the Pleadings.[1] For the reasons stated below, the motion is granted in part and denied in part.

## RULE 12(c) STANDARDS

Rule 12(c) allows a party to move for judgment on the pleadings. A Rule 12(c) motion

---

[1] Defendants style their motion as a "Rule 12(h)(2) Motion for Judgment of the Pleadings." Rule 12(h)(2), however, simply protects a defense of failure to state a claim upon which relief can be granted from being waived by a party's failure to raise the defense in a Rule 12(b)(6) Motion to Dismiss or in a responsive pleading. Fed. R. Civ. Pro. Rule 12(h)(2); *see also Kontrick v. Ryan*, 540 U.S. 443, 459 (2004)("Rules 12(h)(2) and (3) prolong the life of certain defenses . . . ."). Thus, while Rules 12(h)(2) allows defendants to raise a defense of failure to state a claim upon which relief can be granted in a motion for judgment on the pleadings, the motion itself is properly brought pursuant to Rule 12(c).

differs from the various Rule 12(b) motions in that 12(b) motions are brought before the pleadings are closed, and 12(c) motions are brought after. Despite the difference in timing, Rule 12(c) motions are reviewed under the same standards that apply to motions under Rule 12(b). Accordingly, courts should only grant a motion for judgment on the pleadings if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Ind. Gun & Outdoor Shows, Inc.* v. *City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing *Craigs, Inc.* v. *General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)) (internal quotation omitted). In reviewing the complaint, the court views all facts alleged therein in the light most favorable to the plaintiff. *See GATX Leasing* v. *Nat'l Union Fire Inc. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

## FACTS

On or about June 24, 2003, Wexler and Circle Group entered into the Agreement whereby Wexler was to provide Circle Group with consulting services in exchange for, among other things, "(ii) a warrant to purchase 50,000 (freely tradable) shares of [Circle Group's] common stock exercisable at $1.50 per share; (iii) a warrant to purchase 50,000 (freely tradable) shares of [Circle Group's] common stock exercisable at $2.50 per share; and (iv) a warrant to purchase 50,000 (freely tradable) shares of [Circle Group's] common stock exercisable at $3.50 per share. The warrant shall remain valid for a period of two (2) years from the date of expiration of this agreement.[2] The warrant shall have the right of a 'cash less' exercise." (Agreement, at 2.) The terms of the Agreement were negotiated over a period of several days, and Halpern was personally involved in the negotiations with Wexler over the consideration

---

[2]The Agreement provides that it "shall be effective from June 24, 2003 and shall continue in effect for a period of 3 months thereafter."

Warrants. (Complaint, at 19-20.) For the next six months, Wexler repeatedly contacted Halpern and Circle Group to request freely tradeable shares on a cashless basis in exchange for the Warrants, but Circle Group refused. (*Id.* ¶ 21-24.) According to Wexler, even after Circle Group's stock became freely tradeable in July 2004, Halpern and Circle Group still refused to deliver shares to Wexler. (*Id.* ¶ 25.)

## DISCUSSION

Count I of the Complaint alleges that Circle Group materially breached the Agreement and the Warrants by (a) refusing issue to Wexler Circle Group stock on a cashless basis and instead demanding that Wexler pay cash consideration up-front for the shares at the strike prices set forth in the Agreement; (b) refusing to issue Wexler freely tradeable shares of Circle Group stock and instead offering Wexler restricted and non-freely tradeable shares; and (c) refusing to issue to Wexler cashless and freely tradeable shares of Circle Group stock after Circle Group registered additional shares of its stock in July, 2004. Count I seeks monetary damages measured by the price of Circle Group stock on January 13, 2003, when Wexler could have sold the stock, minus the cashless exercise strike price. Count II seeks the same damages under a *quantum meruit* theory. Count III alleges that Halpern purposely and fraudulently deceived Wexler by intentionally misrepresenting that Wexler would receive freely tradeable shares of Circle Group stock on a cashless basis in exchange for Wexler's consulting services, and that Wexler reasonably relied on Halpern's misrepresentation to his detriment.

## I. Count I

The essence of Circle Groups argument for judgment on the pleadings on Count I is that the terms of the Warrants, which provide (with some ambiguity as discussed below) that they were exercisable only after the Securities and Exchange Commission declared Circle Group's

being offered for Wexler's consulting services. (Complaint ¶ 10.) Wexler alleges that during the negotiations he insisted that the Warrants be exercisable on a cashless basis and be for freely tradeable shares. Wexler alleges that Halpern agreed "both orally and in writing to these two important features of the Warrants," though Halpern was aware that freely tradeable shares of Circle Group stock were not available in the event Wexler exercised the Warrants. (*Id.* ¶ 11, 14.)

On or about July 1, 2003, Circle Group issued Wexler the Warrants required by the Agreement. Each of the Warrants provides,

> These securities have not been registered under the Securities Act of 1933, as amended, or any state securities laws. They have been acquired solely for investment and not with a view to, or in connection with, the sale or distribution thereof. They may not be sold, offered for sale, pledged, hypothecated or otherwise distributed in the absence of an effective registration statement related thereto . . . .

The Warrants also provide that the right to purchase all of the shares under the Warrants "shall vest immediately upon issuance of this Warrant and be cashless." Under the heading "Exercise of Warrant," each of the Warrants states

> The purchase rights represented by this Warrant are exercisable by the Holder, in whole or in part, at any time or from time to time, prior to the Expiration Time and *after the time a registration statement registering the shares of Common Stock issuable upon exercise of this Warrant has been declared effective by the Securities and Exchange Commission*, by the surrender of this Warrant and the Notice of Exercise annexed hereto, all duly completed and executed on behalf of the Holder, . . . and *upon payment of the Exercise Price for the Shares thereby purchased (by cash, certified or cashier's check, or wire transfer payable to the Company)*.

(Warrants, at 1; emphasis added.)

On or about January 13, 2004, Wexler attempted to exercise each of the Warrants to acquire freely tradeable shares on a cashless basis. On or about January 30, 3004, Halpern told Wexler that Circle Group did not have freely tradeable shares to exchange for the Warrants. He also stated that Wexler would have to pay cash consideration to Circle Group to exercise the

registration of the stock effective and upon payment of the exercise price of the shares, override the express terms of the Agreement. Wexler argues in response that the terms of the Warrant, to which he never agreed, cannot supercede the Agreement's explicit requirement that Circle Group issue Wexler fully registered freely tradeable shares of Circle Group's stock on a cashless basis. The court agrees with Wexler.

Circle Group is correct that, under Illinois law, an exercise of an option–or, here, a warrant–is valid only if the holder strictly complies with the requirements set forth in the option. *See, e.g., Southwest Forest Industries, Inc. v. Sharfstein*, 482 F.2d 915, 924 (7th Cir. 1972) ("Illinois law is particularly adamant in requiring that option contracts be strictly construed and that an option be considered exercised only if the person holding the opting power adheres exactly to the conditions precedent to its effective consummation."). Nevertheless, Wexler negotiated for certain specific terms to be included in the Warrants, namely, that the Warrants be for freely tradeable shares issued on a cashless basis. Circle Group cannot modify these terms without Wexler's assent. *York v. Central Illinois Mutual Relief Ass'n*, 173 N.E.2d 80, 83 (Ill. 1930). Thus, insofar as the terms of the Warrants contradict those of the Agreement, and insofar as Circle Group relies on contradictory terms in the Warrants to refuse to perform according to the terms of the Agreement, Circle Group has breached the Agreement regardless of the terms of the Warrants.

Circle Group's argument that it was not required to issue shares on a cashless basis because the Warrants provide that the option may only be exercised "upon payment of the Exercise Price for the Shares thereby purchased (by cash, certified or cashier's check, or wire transfer payable to the Company)" is thus flawed. The Agreement explicitly provides that the Warrants "shall have a right of 'cash less' exercise." Circle Group's refusal to allow Wexler to

exercise the Warrants on a cashless basis is a clear breach of the Agreement. Moreover, the Warrants themselves are internally contradictory. In addition to requiring up-front payment for the exercise of the Warrants, the Warrants also provide that the right to purchase all of the shares under the Warrants "shall . . . be cashless." Thus, Circle Group's motion for judgment on the pleadings on this ground is denied.

Circle Group also argues that it is entitled to judgement on Count I because Wexler "does not allege that he submitted the notice of exercise of the warrant" as required by the Warrants. (Mot., at 4.) The Warrants' requirement that Wexler submit a proper notice of exercise of the Warrants does not conflict with any of the terms of the Agreement. Thus, Circle Group commits no wrong by requiring Wexler to comply with the requirement. The problem with Circle Group's argument, however, is that it is not clear from the Complaint that Wexler failed to submit a proper notice of exercise of the Warrants. Wexler alleges only that he "attempted to exercise each of the Warrants." (Compl. ¶ 17.) As Circle Group admits, Wexler "does not allege how he attempted to exercise the option" (Mot., at 5), nor is he required to make such an allegation. "A complaint is not required to allege all, or any, of the facts logically entailed by the claim. . . . [A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). Thus, Circle Group's motion for judgment on the pleadings on this ground is denied.

Finally, Circle Group argues that the Agreement did not require Circle Group to provide Wexler with Warrants that were *immediately* exercisable for freely tradable shares. This is true. Nothing in the Agreement provides that the Warrants were to be exercisable immediately. The Agreement only requires Circle Group to provide Warrants for freely tradeable shares; it does not

require those Warrants to be exercisable at any specific time. This does not, however, resolve the matter. Under Illinois law, if a contract does not state a specific time for performance, "a reasonable time will be presumed to have been intended by the parties." *Miller v. Pettengill*, 63 N.E.2d 735, 738 (Ill. 1945). Applying this rule to the Agreement, Circle Group was required to provide Wexler with Warrants exercisable for freely tradeable shares within a reasonable time.[3] Because Circle Group makes no argument that it did so, the motion for judgment on the pleadings on this ground is denied.

## II. Count II

In Count II, pled in the alternative to Count I, Wexler seeks to recover damages under a theory of *quantum meruit*. Under Illinois law, however, a plaintiff cannot recover under *quantum meruit* when there is an express contract governing the same subject matter. *See, e.g., First Commodity Traders v. Heinhold Commodities*, 766 F.2d 1007, 1011 (7th Cir. 1985) (citing *LaThrop v. Bell Federal Savings & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977)). Neither party disputes that there is an express contract governing the subject matter at issue in this case. Thus, Circle Group's motion for judgment on the pleadings on Count II is granted.

## III. Count III

Count III alleges that Halpern committed fraud by intentionally misrepresenting to Wexler that he would receive freely tradeable shares of Circle Group stock on a cashless basis in exchange for Wexler's consulting services. This sounds very much like a claim for "promissory

---

[3]Like the Warrants' contradictory provisions regarding whether the Warrants were exercisable on a cashless basis, the Warrants' provisions regarding the timing of the exercise of the Warrants are ambiguous. The first paragraph of the Warrants provides that "[t]he right to purchase all of the Shares under the Warrant shall vest immediately upon issuance of this Warrants," while the second paragraph provides that the Warrants are only exercisable "after the time a registration statement registering the shares of Common Stock issuable upon exercise of this Warrant has been declared effective by the Securities and Exchange Commission." The court will not attempt to divine the meaning of such a poorly drafted contract on a motion for judgment on the pleadings.

fraud," that is, a fraud based on a false representation of future conduct. Illinois does not allow a recovery for promissory fraud. *Stamatakis Indus. v. King*, 520 N.E.2d 770, 772 (1st Dist. 1987)("The promissory fraud alleged here is a promise to perform a contract with an intention not to perform. Illinois courts have held that this is not actionable.")(internal citations omitted); *Smith v. Prime Cable*, 658 N.E.2d 1325, 1335 (1st Dist 1995)("Generally, a promise to perform an act, though accompanied by an intention not to perform it, is not a false representation as will constitute fraud.").

Wexler argues, however, that Halpern's actions fall under an exception to the general prohibition on promissory fraud claims when the misrepresentations are part of a "scheme to defraud." The scheme to defraud exception applies where "a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment." *Concord Industries, Inc. v. Marvel Industries Corp.*, 462 N.E.2d 1252, 1255 (1984); *see also Price v. Highland Community Bank*, 722 F.Supp. 454, 460 (N.D.Ill.1989) ("[I]f the intention behind the intentionally false promise is to induce the promisee to act for the promisor's benefit, the promise is actionable."). Wexler alleges that Halpern intended to deceive Wexler, knowing that Wexler would rely on Halpern's representations, and that Wexler relied on Halpern's representations to his detriment. This is sufficient to state a claim for fraud under the scheme to defraud exception. Thus, Halpern's motion for judgment on the pleadings on Count III is denied.

## CONCLUSION

For the reasons stated above, defendants' motion for judgment on the pleadings is granted on Count II and denied on Counts I and III [#26].

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: AUG 1 0 2005

AUG 1 0 2005